UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CHESTER CREDEUR                     CIVIL ACTION NO. 13-cv-01367

VERSUS                              JUDGE DOHERTY

YORK CLAIM SERVICE, ET AL.          MAGISTRATE JUDGE HANNA

## RULING  ON  MOTION

Currently pending before this Court is the plaintiff's motion to remand.  (Rec.
Doc. 11).  Oral argument was held on August 20, 2013, and the motion was taken
under advisement.  For the reasons assigned at the hearing, the undersigned ordered
the plaintiff to supplement the record with copies of the documents sent to the
defendants by e-mail on March 15, 2013 and March 18, 2013.  (Rec. Doc. 27).  The
plaintiff complied with the order.  (Rec. Doc. 28).  After review of the pleadings, the
relevant jurisprudence, the applicable law, and the arguments advanced by counsel
at the hearing on the motion, and for the reasons explained below, the motion to
remand is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of a motor vehicle accident.  On October 26, 2011, Red
Lawrence was driving his vehicle in Acadia Parish.  Chester Credeur was a passenger

in Lawrence's vehicle.  Kevin Carty, a tourist from Ireland, who was driving a rental car, allegedly made a left turn and struck Lawrence's vehicle.  Credeur claims to have been injured in the accident.

Credeur's original petition was filed in the 15th Judicial District Court, Acadia Parish, Louisiana, in October 2012.  Credeur sued Carty (who has since been dismissed from the suit); Dollar Rent a Car Systems, Inc. d/b/a Dollar Operations, Inc. d/b/a DTG Operations, Inc., which was alleged to be the owner of the vehicle that Carty was driving at the time of the accident; York Claim Service, which was alleged to be the insurer of Carty's vehicle; and Progressive Casualty Insurance Company, which was alleged to provide uninsured/underinsured motorist insurance.

Credeur's petition does not demand a specific amount of damages nor does it contain a statement complying with Louisiana Code of Civil Procedure Article 893, which requires a general allegation if there is a lack of federal-court jurisdiction due to insufficient damages.  It does, however, allege that Credeur sustained damages for past, present, and future mental and physical pain and suffering; loss of enjoyment of life; past and future lost wages; lost earning capacity; past, present, and future medical expenses; loss of insurability; inconvenience; and other unspecified damages. Despite this lengthy list of claimed damages, it is not facially apparent from the allegations of the petition that the claimed damages exceed $75,000.

On March 15, 2013, defense counsel e-mailed the plaintiff's counsel and asked, "More than 50k?  75k?"[1]  The response was:

> Yes.  Just medicals right now are around $50,000.00. Shoulder surgery projected costs are approximately $32,000.00, plus eight weeks of physical therapy three times per week at $284.00 per visit.  Lower back injection is approximately $4,000.00.  If injection is successful will proceed with decompression surgery which would be approximately $45,000 - $50,000.  I am gathering all this information to send to you.  Thanks.[2]

On March 18, 2013, the plaintiff's counsel followed up the March 15 e-mail by providing to defense counsel, again via e-mail, copies of "the medical bills in our possession at this time relative to Chester Credeur" and "the medical records in our possession at this time relative to Chester Credeur."[3]  The records clearly demonstrate that, although there were pre-existing conditions, the plaintiff had ongoing back and shoulder treatment by two surgeons and a chiropractor related to the October, 2011 accident.  There were multiple recommendations for surgery to repair a torn left rotator cuff.  There was also impingement and acromioclavicular arthritis in the left shoulder.  The plaintiff had undergone lumbar facet injections at L4-5, L5-S1 and S1-S2 bilaterally in October of 2012 that afforded no relief. There was an assessment

---

[1]     Rec. Doc. 11-1 at 1.

[2]     Rec. Doc. 11-1 at 1.

[3]     Rec. Doc. 11-2; Rec. Doc. 28-1; Rec. Doc. 28-2.

of a herniated nucleus pulposus at L1-2 causing the type of radicular pain described by the plaintiff since the accident.

On April 18, 2013, defendants York Risk Services Group, Inc. (formerly known as York Claims Service, Inc.) and Rental Car Finance Corp. (improperly named in the petition as DTG Operations, Inc. formerly known as Dollar Rent a Car Systems, Inc./Dollar Operations, Inc.), filed an answer and exception of vagueness in the state-court proceeding, arguing that the petition was impermissibly vague because "the defendant is unable to ascertain whether a jury trial can be demanded and whether this matter can be removed to federal court."[4]  The threshold for a jury trial in Louisiana is $50,000[5] and the threshold for federal court jurisdiction is $75,000 when the parties are diverse in citizenship.[6]  The exception was set to be heard on May 13, 2013.

On an unknown date, alleged by the removing defendants to be April 18, 2013, the removing defendants propounded "a pre-answer interrogatory," which actually

---

[4]      Rec. Doc. 1-1 at 11-16.

[5]      Louisiana Code of Civil Procedure Article 1732(1).

[6]      28 U.S.C. § 1332(a).

seems to be more in the nature of a request for admission, reading:  "Plaintiff's damages will not exceed the sum of $75,000.00."[7]

The interrogatory went unanswered.  However, on May 1, 2013, the plaintiff's counsel faxed a letter to defense counsel, in which he stated:  "Please allow this correspondence to serve as confirmation that Chester Credeur's amount of damages far exceed $50,000.00."[8]  The plaintiff's counsel also asked if the hearing on the vagueness exception could be dispensed with in light of the information provided.

On May 8, 2013, the plaintiff formally answered the interrogatory (although the certificate of service was erroneously dated March 8), and the plaintiff's counsel faxed the response to the defendants' counsel.[9]  The response reads:  "Denied. Plaintiff's damages will far exceed the sum of $75,000.00."  The response goes on to explain that medical expenses of $51,601.68 had already been incurred and both rotator cuff surgery and low back surgery had been recommended, which would result in additional medical expenses.  The anticipated costs of those procedures are listed, along with the anticipated cost of low back injections and physical therapy. The figures listed in the answer are completely consistent with the figures in the e-mail

---

[7]     Rec. Doc. 1-5 at 2.

[8]     Rec. Doc. 21-3.

[9]     Rec. Doc. 1-5 at 1-3.

of March 15 authored by plaintiff's counsel which were backed up by the medical invoices and records sent on March 18. According to plaintiff's counsel at argument, the information provided in the May interrogatory response was the same as the information given to defense counsel on March 15. This Court sees nothing to contradict  that statement.

On May 17, 2013, Progressive was dismissed from the state-court action.[10]

The record contains no evidence that the hearing on the vagueness exception was held.

On June 5, 2013, York Risk Services Group, Inc. and Rental Car Finance Corp. (hereinafter referred to as "the removing defendants") removed the action to this forum, within thirty days after the plaintiff responded to the interrogatory but more than thirty days after the e-mail correspondence of March 15, the correspondence with attachments on March 18 and the fax correspondence of May 1.

On July 2, 2013, the plaintiff filed a motion to remand (Rec. Doc. 1), arguing that the removal was untimely because the defendants knew when they received the e-mail on March 15 that the amount in controversy exceeded $75,000.00.  The plaintiff contends that the removing defendants should have removed the case not later than thirty days after March 15.  Despite the fact the removing defendants

---

[10]     Rec. Doc. 13-1 at 103.

learned nothing new from the interrogatory response that they did not already know since receiving the e-mail on March 15 and the invoices and records on March 18, they nonetheless contend that they could not ascertain that the amount in controversy exceeded the statutory threshold until they received the plaintiff's response to their interrogatory on May 8.  The removing defendants therefore contend that removal within thirty days of May 8 was timely.  The issue now before this Court is which of the two potential "other papers" started the thirty-day removal clock ticking – the e-mails and attachments of March 15 and 18 or the discovery response of May 8.

**LAW AND ANALYSIS**

The timing of removal is governed by 28 U.S.C. § 1446(b).  Section 1446(b)(1) states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading ***setting forth*** the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. [Emphasis added.]

Section 1446(b)(3) states:

> Except as provided in subsection (c), ***if the case stated by the initial pleading is not removable***, a notice of removal may be filed within 30 days after receipt by the defendant,

-7-

> through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ***ascertained*** that the case is one which is or has become removable.  [Emphasis added.]

Section 1446(c) sets a one-year limit on removal.    Additionally, Section 1446(c)(3)(A) states:

> If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

Prior to the revision of Section 1446 effective December 7, 2012, the text that now appears in Section 1446(b)(1) was the first paragraph of Section 1446(b) (with certain minor revisions), while the text that now appears in Section 1446(b)(3) was a part of the second paragraph of Section 1446(b).  Therefore, the jurisprudence predating December 7, 2012 and referring to the first and second paragraphs of Section 1446(b) now pertains to Section 1446(b)(1) and (3), respectively.  As the Fifth Circuit has noted, "[t]he statute [the second paragraph of Section 1446(b)] as amended is textually identical; only paragraph lettering was changed."[11]  Thus,

> if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it.  If the initial pleading did

---

[11]     *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 n. 7 (5ᵗʰ Cir. 2013).

not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable. In any event, removal may not occur more than one year after commencement of the action.[12]

"The first paragraph [of Section 1446(b) – now Section 1446(b)(1)] governs notices of removal based on an 'initial pleading *setting forth* the claim for relief upon which such action or proceeding is based.'"[13]  The thirty-day period referenced in Section 1446(b)(1) applies only when the initial pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."[14]  "By contrast, the second paragraph [now Section 1446(b)(3)] governs notices of removal based on 'a copy of an amended pleading, motion, order or other paper from which it *may first be ascertained* that the case is one which is or has become removable.'"[15]  As the Fifth Circuit has explained,

> "Setting forth," the key language of the first paragraph [now Section 1446(b)(1)], encompasses a broader range of information that can trigger a time limit based on notice

---

[12]     *Mumfrey v. CVS*, 719 F.3d at 397-398 (internal citations and footnotes omitted).

[13]     *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 209 (5th Cir. 2002) (emphasis in original) (quoting 28 U.S.C. § 1446(b) – now 28 U.S.C. § 1446(b)(1)).

[14]     *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *Bosky v. Kroger*, 288 F.3d at 210.

[15]     *Bosky v. Kroger*, 288 F.3d at 209 (emphasis in original) (quoting 28 U.S.C. § 1446(b) – now 28 U.S.C. § 1446(b)(3)).

> than would "ascertained," the pivotal term in the second
> paragraph [now Section 1446(b)(3)].  To "set forth" means
> to "publish" or "to give an account or statement of."
> "Ascertain" means "to make certain, exact, or precise" or
> "to find out or learn with certainty."  The latter, in contrast
> to the former, seems to require a greater level of certainty
> or that the facts supporting removability be stated
> unequivocally.[16]

Therefore, "the information supporting removal in a copy of an amended
pleading, motion, order or other paper must be 'unequivocally clear and certain' to
start the time limit running for a notice of removal under the second paragraph of
section 1446(b) [now Section 1446(b)(3)]."[17]  This rule was adopted because "it
promotes certainty and judicial efficiency by not requiring courts to inquire into what
a particular defendant may or may not subjectively know."[18]

In this case, the original petition does not include a specific monetary demand;
thus, it does not "affirmatively reveal[] on its face that the plaintiff is seeking
damages in excess of the minimum jurisdictional amount of the federal court."[19]
Accordingly, the defendants properly did not remove this action within thirty days of
the petition being filed.  Instead, the defendants relied upon the exception contained

---

[16]   *Bosky v. Kroger*, 288 F.3d at 211 (footnotes omitted).

[17]   *Bosky v. Kroger*, 288 F.3d at 211.

[18]   *Chapman v. Powermatic*, 969 F.2d at 163.

[19]   *Chapman v. Powermatic*, 969 F.2d at 163.

in Section 1446(b)(3), which allows a defendant to file a notice of removal "within thirty days after receipt by the defendant. . . of a copy of an. . . other paper from which it may first be ascertained that the case is one which is or has become removable."

The removing defendants argue that Credeur's failure to include a specific jurisdictional allegation in his petition made it impossible for them to determine whether the lawsuit was removable until they received the response to their interrogatory on May 8. But the plaintiff's failure to include the statutorily-required allegation in his petition does not resolve the issue of the timeliness of the removal.

Louisiana Code of Civil Procedure Article 893(A)(1) states that no specific amount of monetary damages shall be included in a plaintiff's petition. Therefore, Credeur was prohibited from requesting a specific amount of damages when he initiated this lawsuit. The same statute also states, however, that "if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages, . . . a general allegation that the claim exceeds or is less than the requisite amount is required." No such general allegation was set forth in Credeur's petition.

The fact that Credeur did not include such a jurisdictional allegation in his petition supports a finding that the jurisdictional amount is satisfied and must be

considered in the light of other relevant evidence.[20]  Some courts have even held that the failure to include such an allegation creates a strong presumption in favor of federal-court jurisdiction.[21]

In this case, however, the plaintiff and the removing defendants all agree that the plaintiff is seeking to recover an amount in excess of the federal-court jurisdictional threshold.  The question is not whether the amount in controversy exceeds the statutory minimum but when the defendants knew, with certainty, that this was true.  The plaintiff's omission of the Article 893 allegation is not determinative of the amount in controversy, nor does it resolve whether the March 15 and 18 e-mails or the May 8 discovery response is an "other paper" that started the thirty-day removal clock ticking.

The removing defendants argue that an e-mail from the plaintiff's counsel cannot constitute an "other paper."   There is no statutory or jurisprudential support for that conclusion.  28 U.S.C. § 1446(b)(3) expressly includes amended pleadings,

---

[20]       See, e.g., *Borill v. Centennial Wireless, Inc.*, 872 F.Supp.2d 522, 28 (W.D. La. 2012), (plaintiff's failure to allege "her damages are less than the amount required for federal diversity jurisdiction" supported the denial of remand); *Trahan v. Drury Hotels*, No. 11-521, 2011 WL 2470982, at *4 (E.D. La. June 20, 2011); *Clayton v. Am. Sec. Ins. Co*., 466 F.Supp.2d 720, 723 (M.D. La. 2006) ("The fact that the plaintiff did not make the jurisdictional allegation required by La.Code Civ. P. art. 893(A)(1) supports the conclusion that the jurisdictional amount is satisfied.").

[21]       See, e.g., *Sonnier v. Republic Fire & Cas. Ins. Co*., No. 06-1554,2006 WL 3924238, at *1 (W.D. La. Nov. 22, 2006); *Malone v. Scottsdale Ins. Co*., No. 12-1508,  2012 WL 6632440, at *4 n. 10 (E.D. La. Dec. 19, ,2012)

motions, and orders in the list of items that may constitute "other paper" but does not limit "other paper" to only those three items.  28 U.S.C. § 1446(c)(3)(A) expressly recognizes that information found in the record of the state-court proceeding and discovery responses may be "other paper."  Again, however, "other paper" is not limited to those listed items.

A deposition transcript may be other paper.[22]  A post-complaint demand letter from the plaintiff's counsel to the defendant's counsel may be "other paper" if it is "not plainly a sham."[23]  Additionally, "other paper" requires a voluntary act by the plaintiff.[24]  Therefore, the defendant's subjective knowledge put down on paper does not constitute an "other paper."[25]  There is no reason why an e-mail communication, particularly one enclosing various documents as attachments, that satisfies these same criteria would not also qualify as an "other paper."

---

[22]     *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[23]     *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000).  See, also, *Cole v. Knowledge Learning Corp.*, No. 09-2760, 2009 WL 1269591, at *4-5 (E.D. La. May 6, 2009), *aff'd* 416 Fed. App'x 437 (5th Cir. 2011), holding that a demand letter reciting the alleged injuries, computing the alleged special damages suffered, and putting forth a final settlement figure was an "other paper."

[24]     *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 254 (5th Cir. 1961).

[25]     *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

The removing defendants primarily rely on two cases for their argument that an e-mail cannot be "other paper."  In *Hiles v. Wal-Mart Stores East*, *LP*,[26] the plaintiff sent the defendant a settlement brochure before the suit was filed, advising that she would settle for $230,000.  The plaintiff claimed that she also confirmed the amount of damages she claimed in an e-mail to the defendant's counsel.  The court found that, because it was sent before the suit was filed, the settlement brochure did not qualify as an "other paper."  The court also found that the e-mail was not an "other paper" because it was "not sufficiently clear and specific as to the amount of damages so as to commence the running of the removal clock."[27]  The court did not hold that an e-mail can never be an "other paper."

In *Styron v. State Farm Fire & Casualty, Co.*,[28] the plaintiff argued that the defendant was aware, before the defendant's counsel sent an e-mail on October 25, that the amount in controversy exceed the jurisdictional threshold.  On that date, the defendant's counsel sent an e-mail to the plaintiff's counsel seeking confirmation that "the $80,000 figure you gave was a. . . bottom line number."[29]  The court rejected the

---

[26]    *Hiles v. Wal-Mart Stores East, LP*, 618 F.Supp.2d 565 (S.D. Miss. 2009).

[27]    *Hiles v. Wal-Mart*, 618 F.Supp.2d at 567-568.

[28]    *Styron v. State Farm Fire & Casualty Co.*, No. 10-cv-1729, 2011 WL 721473 (W.D. La. Feb. 22, 2011).

[29]    *Styron v. State Farm*, 2011 WL 721473, at *3.

argument for two reasons.  First, no evidence was presented establishing that the defendant gained its knowledge concerning the amount in controversy more than thirty days before removal.  Second, the e-mail was not initiated by the plaintiff but instead set forth the defendant's subjective knowledge.  The court noted that "a letter requesting that a plaintiff confirm or make a settlement offer has never been found sufficient" to start the removal clock.  This ruling is consistent with the requirements for letters from counsel constituting "other paper."  And again, the court did not hold that an e-mail cannot, under any circumstances, constitute "other paper."

The e-mails in *Hiles* and *Styron* are very different from the e-mails at issue in this case, which set forth the basis for the plaintiff's contention that the amount in controversy exceeded the jurisdictional threshold not only in the correspondence itself, but with the documents attached to back up that contention.  While the use of discovery might be the preferred method for ascertaining the amount in controversy when it is not apparent from the face of the plaintiff's petition,[30] there is no hard and fast rule that an e-mail cannot be "other paper" if it satisfies the requirements used to determine whether a letter from counsel is "other paper."

The removing defendants argue that the e-mail correspondence of March 15 and March 18 is not an "other paper" because it contains nothing more than the

---

[30]        *Styron v. State Farm*, 2011 WL 721473, at *4.

-15-

subjective analysis of the plaintiff's counsel.  No statutory or jurisprudential support for that contention has been located.  What the jurisprudence does say is that a writing setting forth the defendant's subjective knowledge cannot convert a case into a removable action.[31]

Additionally, in this case, the information set forth in the March 15 and March 18 e-mails was not merely the subjective knowledge of the plaintiff's counsel.  On March 15,  the plaintiff's counsel responded to an e-mail from the removing defendants' counsel and stated that the plaintiff's claimed damages exceed $75,000.  In the same responsive e-mail, the plaintiff's counsel then went on to explain why.  He stated that medical expenses were approximately $50,000; that the cost of a recommended shoulder surgery would be approximately $32,000 not including post-surgical physical therapy; and that if lower back injections were successful, decompression surgery costing $40,000 to $50,000 would likely take place.  The plaintiff's counsel followed up this e-mail with further e-mail correspondence on March 18,  attaching copies of various documents supporting what was said in the first.

---

[31]     *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 494 (5th Cir. 1996), citing *Chapman v. Powermatic, Inc.*, 969 F.2d at 163.

The plaintiff's answer to the removing defendants' interrogatory was not substantially different.  It stated that the plaintiff's medical costs totalled $51,601.68, stated that rotator cuff and low back surgery had been recommended, and set forth the anticipated costs for those procedures:  $45,000 to $50,000 for the back surgery; and a total of $32,858 for the shoulder surgery plus an additional cost for post-surgery physical therapy.  In other words, the removing defendants did not learn anything new from the answer to the interrogatory that they did not already know about from the earlier e-mail correspondence.

Accordingly, the undersigned finds that the e-mail correspondence and attachments of March 15 and 18 constituted an "other paper" that triggered the thirty-day removal period.  The first e-mail was an affirmative act by the plaintiff's counsel that clearly stated that the amount in controversy exceeded both $50,000 and $75,000, thus exceeding the damages necessary for a jury trial in state court and exceeding the amount necessary for federal-court jurisdiction in the event that the defendants chose to remove the case.  The plaintiff's counsel did not just respond to the question posed by the defendants' counsel.  He voluntarily undertook to, first, explain the basis for his answer and, second, provide objective support for his answer.  Three days after the first e-mail, the plaintiff's counsel e-mailed copies of medical records and copies of medical bills supporting his response.  If nothing else, these documents

demonstrated that the first e-mail had a legitimate basis and was not a sham.  Taken together, the e-mail correspondence and attachments  of March 15 and 18 from the plaintiff's counsel to the defendants' counsel was sufficient to satisfy the unequivocally clear and certain standard that the Fifth Circuit requires be met in evaluating the content of purported "other paper."

Accordingly, the defendants had thirty days from March 18, 2013 in which to remove the action to federal court.  The defendants did not remove the action until June 5, 2013.  This was more than thirty days after March 15 and more than thirty days after March 18.  Accordingly, the undersigned finds that the removal notice was untimely and, for that reason, the plaintiff's motion will be granted and this action will be remanded to the state court where it commenced.

## <u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to remand (Rec. Doc. 11) is GRANTED.

Signed at Lafayette, Louisiana, on September 9th, 2013.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-18-