RECEIVED

NOV - 4 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

CHESTER CREDEUR                                        CIVIL ACTION NO. 13-1367

VERSUS                                                 JUDGE DOHERTY

YORK CLAIM SERVICE, ET AL.                             MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before the Court is an Appeal of the magistrate judge's "Ruling on Motion" [Doc. 32], in which the magistrate judge concluded the removal of the instant lawsuit to federal court was untimely, and the motion to remand should be granted.  Defendants York Risk Services Group, Inc. and Rental Car Finance Corporation (collectively, "defendants") appeal the ruling, and plaintiff Chester Credeur filed a response [Doc. 36].

The crux of the matter on appeal is whether the removal of the instant lawsuit to this Court was timely.  For the following reasons, this Court AFFIRMS the result and rationale reached by the magistrate judge, and this matter is REMANDED to the 15th Judicial District Court for the Parish of Acadia, Louisiana.

I.       **Factual Background and Procedural History**

The factual and procedural background are set forth in the magistrate judge's Memorandum Ruling and are hereby incorporated by reference *in toto*.  The pertinent facts are as follows:

- This lawsuit arises out of a motor vehicle accident. On October 26, 2011, Red Lawrence was driving his vehicle in Acadia Parish. Chester Credeur was a passenger in Lawrence's vehicle. Kevin Carty, a tourist from Ireland, who was driving a rental car, allegedly made a left turn and struck Lawrence's vehicle. Credeur claims to have been injured in the accident.  Credeur's original petition was filed in the 15th Judicial District Court, Acadia Parish, Louisiana, in October 2012. Credeur sued Carty (who has since been dismissed from the suit); Dollar Rent a Car Systems, Inc. d/b/a Dollar

Operations, Inc. d/b/a DTG Operations, Inc., which was alleged to be the owner of the vehicle that Carty was driving at the time of the accident; York Claim Service, which was alleged to be the insurer of Carty's vehicle; and Progressive Casualty Insurance Company, which was alleged to provide uninsured/underinsured motorist insurance.

- Credeur's petition does not demand a specific amount of damages nor does it contain a statement complying with Louisiana Code of Civil Procedure Article 893, which requires a general allegation if there is a lack of federal-court jurisdiction due to insufficient damages. It does, however, allege that Credeur sustained damages for past, present, and future mental and physical pain and suffering; loss of enjoyment of life; past and future lost wages; lost earning capacity; past, present, and future medical expenses; loss of insurability; inconvenience; and other unspecified damages. Despite this lengthy list of claimed damages, it is not facially apparent from the allegations of the petition that the claimed damages exceed $75,000.

- On March 15, 2013, defense counsel e-mailed the plaintiff's counsel and asked, "More than 50k? 75k?" The response was:

  Yes. Just medicals right now are around $50,000.00. Shoulder surgery projected costs are approximately $32,000.00, plus eight weeks of physical therapy three times per week at $284.00 per visit. Lower back injection is approximately $4,000.00. If injection is successful will proceed with decompression surgery which would be approximately $45,000 - $50,000. I am gathering all this information to send to you. Thanks.

- On March 18, 2013, the plaintiff's counsel followed up the March 15 e-mail by providing to defense counsel, again via e-mail, copies of "the medical bills in our possession at this time relative to Chester Credeur" and "the medical records in our possession at this time relative to Chester Credeur."

- The records clearly demonstrate that, although there were pre-existing conditions, the plaintiff had ongoing back and shoulder treatment by two surgeons and a chiropractor related to the October 2011 accident. There were multiple recommendations for surgery to repair a torn left rotator cuff. There was also impingement and acromioclavicular arthritis in the left shoulder. The plaintiff had undergone lumbar facet injections at L4-5, L5-S1 and S1-S2 bilaterally in October of 2012 that afforded no relief. There was an assessment of a herniated nucleus pulposus at L1-2 causing the type of radicular pain described by the plaintiff since the accident.

- On April 18, 2013, defendants York Risk Services Group, Inc. (formerly known as York Claims Service, Inc.) and Rental Car Finance Corp.

2

(improperly named in the petition as DTG Operations, Inc. formerly known as Dollar Rent a Car Systems, Inc./Dollar Operations, Inc.), filed an answer and exception of vagueness in the state-court proceeding, arguing the petition was impermissibly vague because "the defendant is unable to ascertain whether a jury trial can be demanded and whether this matter can be removed to federal court."

- The threshold for a jury trial in Louisiana is $50,000, and the threshold for federal court jurisdiction is $75,000 when the parties are diverse in citizenship. The exception was set to be heard on May 13, 2013. On an unknown date, alleged by the removing defendants to be April 18, 2013, the removing defendants propounded "a pre-answer interrogatory," which actually seems to be more in the nature of a request for admission, reading: "Plaintiff's damages will not exceed the sum of $75,000.00." The interrogatory went unanswered. However, on May 1, 2013, the plaintiff's counsel faxed a letter to defense counsel, in which he stated: "Please allow this correspondence to serve as confirmation that Chester Credeur's amount of damages far exceed $50,000.00." The plaintiff's counsel also asked if the hearing on the vagueness exception could be dispensed with in light of the information provided.

- On May 8, 2013, the plaintiff formally answered the interrogatory (although the certificate of service was erroneously dated March 8), and the plaintiff's counsel faxed the response to the defendants' counsel. The response reads: "Denied. Plaintiff's damages will far exceed the sum of $75,000.00." The response goes on to explain that medical expenses of $51,601.68 had already been incurred and both rotator cuff surgery and low back surgery had been recommended, which would result in additional medical expenses. The anticipated costs of those procedures are listed, along with the anticipated cost of low back injections and physical therapy. The figures listed in the answer are completely consistent with the figures in the e-mail of March 15 authored by plaintiff's counsel which were backed up by the medical invoices and records sent on March 18.[1] On May 17, 2013, Progressive was dismissed from the state-court action. The record contains no evidence that the hearing on the vagueness exception was held.

- On June 5, 2013, the defendants removed the action to this forum, within thirty days after the plaintiff responded to the interrogatory but more than thirty days after the e-mail correspondence of March 15, the correspondence with attachments on March 18, and the fax correspondence of May 1.

---

[1] According to plaintiff's counsel at oral argument before the magistrate judge on the motion to remand, the information provided in the May interrogatory response was the same as the information given to defense counsel on March 15. The magistrate judge noted in his Ruling he saw nothing in the record which contradicted that statement.

On July 2, 2013, the plaintiff filed a motion to remand (Rec. Doc. 1), arguing that the removal was untimely because the defendants knew when they received the e-mail on March 15 that the amount in controversy exceeded $75,000.00. The plaintiff contends the removing defendants should have removed the case not later than thirty days after March 15. In response to the motion to remand, defendants argue they could not ascertain that the amount in controversy exceeded the statutory threshold until they received the plaintiff's response to their interrogatory on May 8. The removing defendants therefore contend removal within thirty days of May 8 was timely. However, the plaintiff's position is that the removal clock began ticking on March 15, 2013 – or at the latest March 18, 2013 – when the plaintiff sent defense counsel an email stating that the amount in controversy exceeded $75,000.00 and supporting that claim with medical records. Plaintiff contends these email communications are the "other paper" which started the thirty-day period for removal.

The issue now before this Court is which of the two potential "other papers" started the thirty-day removal clock ticking – the emails and attachments of March 15 and 18, or the discovery response of May 8.

## II.     Law and Analysis

### A.     Standard of Review

With some exceptions inapplicable for purposes of this motion, a magistrate judge may hear and determine any pre-trial matter pending before a district court. 28 U.S.C. §636(b)(1). Federal law affords the magistrate judge broad discretion in the resolution of non-dispositive matters. *See* Fed. R. Civ. P.72(a). With regard to a non-dispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision demonstrates that the magistrate's determination was clearly erroneous or contrary to law. *Id*; *Castillo v. Frank*, 70 F.3d, 382, 385-86

4

(5th Cir. 1995).

Although the law is unsettled in this circuit on this point, district courts in this circuit have generally adhered to the view that motions to remand are non-dispositive pretrial matters and have applied the clearly erroneous standard of review pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *See, e.g., Lonkowski v. R.J. Reynolds Tobacco Co.,* No. Civ. A. 96-1192, 1996 WL 888182, at *2-4 (W.D. La. Dec. 10, 1996); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration and Production, Inc.,* 844 F. Supp. 1156, 1162 (S.D. Tex. 1994); *Bethay v. Ford Motor Co.,* No. Civ. A. 99-0367, 1999 WL 496488, at *1 (E.D. La. July 13, 1999). The Fifth Circuit has not indicated such motions should be treated otherwise. As such, this Court will apply the "clearly erroneous" standard of review to the magistrate judge's Ruling.

### B.      Standard for Removal

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *citing Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). This Court must presume a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery,* 243 F.3d at 916. Thus, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Property and Cas. Insurance. Co.*, 276 F.3d 720, 723 (5th Cir.2002), *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). *See also Stafford v. Mobil Oil Corp.,* 945 F.2d 803, 804 (5th Cir.1991) ( "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction."), *quoting Getty Oil Corp . v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1259 (5th Cir.1988). "Any ambiguities are construed against removal because the removal statute should be

5

strictly construed in favor of remand." *Manguno*, 276 F.3d at 723, *citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000).

### C.    The Timing of Removal

As the magistrate judge explained in his Ruling, the timing of removal is governed by 28 U.S.C. § 1446(b).  Section 1446(b)(1) states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading ***setting forth*** the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(emphasis added).

Section 1446(b)(3) states:

> Except as provided in subsection (c), ***if the case stated by the initial pleading is not removable***, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ***ascertained*** that the case is one which is or has become removable.

(emphasis added).

Section 1446(c) sets a one-year limit on removal.  Additionally, Section 1446(c)(3)(A) states:

> If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

As the Fifth Circuit has noted, prior to the revision of Section 1446 effective December 7, 2012, the text that now appears in Section 1446(b)(1) was the first paragraph of Section 1446(b) (with certain minor revisions), while the text that now appears in Section 1446(b)(3) was a part of the second paragraph of Section 1446(b).  Therefore, the jurisprudence predating December 7, 2012 and referring to the first and second paragraphs of Section 1446(b) now pertains to Section

1446(b)(1) and (3), respectively.  Thus, if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it. If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable.  In any event, removal may not occur more than one year after commencement of the action.[2]

"The first paragraph [of Section 1446(b) – now Section 1446(b)(1)] governs notices of removal based on an 'initial pleading *setting forth* the claim for relief upon which such action or proceeding is based.'" *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 209 (5th Cir. 2002).  The thirty-day period referenced in Section 1446(b)(1) applies only when the initial pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional  amount of the federal court." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *Bosky*, 288 F.3d at 210.  "By contrast, the second paragraph [now Section 1446(b)(3)] governs notices of removal based on 'a copy of an amended pleading, motion, order or other paper from which it *may first be ascertained* that the case is one which is or has become removable.'" *Bosky*, 288 F.3d at 209.[3]

The caselaw is clear that "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b) [now Section

---

[2] Jurisprudence supporting the foregoing statements of law is set forth in the magistrate judge's Ruling, Doc 32.

[3] As the Fifth Circuit has explained, "[s]etting forth," the key language of the first paragraph [now Section 1446(b)(1)], encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph [now Section 1446(b)(3)].  To "set forth" means to "publish" or "to give an account or statement of."  "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty."  The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

1446(b)(3)]." *Id.* at 211.   This rule was adopted because "it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." *Chapman v. Powermatic*, 969 F.2d at 163.

**D.     The Magistrate Judge's Decision**

In the instant case, the magistrate judge concluded the email correspondence and attachments sent from plaintiff's counsel on March 15 and March 18 constituted the "other paper" that triggered the thirty-day removal period.   The magistrate judge distinguished cases cited by the defendants in support of their argument that the removal period was not triggered until the plaintiff formally answer discovery on May 8, as follows:

> The e-mails in *Hiles* and *Styron* are very different from the e-mails at issue
> in this case, which set forth the basis for the plaintiff's contention that the amount in
> controversy exceeded the jurisdictional threshold not only in the correspondence
> itself, but with the documents attached to back up that contention. While the use of
> discovery might be the preferred method for ascertaining the amount in controversy
> when it is not apparent from the face of the plaintiff's petition, there is no hard and
> fast rule that an e-mail cannot be "other paper" if it satisfies the requirements used
> to determine whether a letter from counsel is "other paper."
>
> The removing defendants argue that the e-mail correspondence of March 15
> and March 18 is not an "other paper" because it contains nothing more than the
> subjective analysis of the plaintiff's counsel. No statutory or jurisprudential support
> for that contention has been located. What the jurisprudence does say is that a writing
> setting forth the defendant's subjective knowledge cannot convert a case into a
> removable action.
>
> Additionally, in this case, the information set forth in the March 15 and
> March 18 e-mails was not merely the subjective knowledge of the plaintiff's counsel.
> On March 15, the plaintiff's counsel responded to an e-mail from the removing
> defendants' counsel and stated that the plaintiff's claimed damages exceed $75,000.
> In the same responsive e-mail, the plaintiff's counsel then went on to explain why.
> He stated that medical expenses were approximately $50,000; that the cost of a
> recommended shoulder surgery would be approximately $32,000 not including
> postsurgical physical therapy; and that if lower back injections were successful,
> decompression surgery costing $40,000 to $50,000 would likely take place. The
> plaintiff's counsel followed up this e-mail with further e-mail correspondence on

8

March 18, attaching copies of various documents supporting what was said in the first.

The plaintiff's answer to the removing defendants' interrogatory was not substantially different. It stated that the plaintiff's medical costs totaled $51,601.68, stated that rotator cuff and low back surgery had been recommended, and set forth the anticipated costs for those procedures: $45,000 to $50,000 for the back surgery; and a total of $32,858 for the shoulder surgery plus an additional cost for post-surgery physical therapy. In other words, the removing defendants did not learn anything new from the answer to the interrogatory that they did not already know about from the earlier e-mail correspondence.

Accordingly, the undersigned finds that the e-mail correspondence and attachments of March 15 and 18 constituted an "other paper" that triggered the thirty day removal period. The first e-mail was an affirmative act by the plaintiff's counsel that clearly stated that the amount in controversy exceeded both $50,000 and $75,000, thus exceeding the damages necessary for a jury trial in state court and exceeding the amount necessary for federal-court jurisdiction in the event that the defendants chose to remove the case. The plaintiff's counsel did not just respond to the question posed by the defendants' counsel. He voluntarily undertook to, first, explain the basis for his answer and, second, provide objective support for his answer. Three days after the first e-mail, the plaintiff's counsel e-mailed copies of medical records and copies of medical bills supporting his response. If nothing else, these documents demonstrated that the first e-mail had a legitimate basis and was not a sham. Taken together, the e-mail correspondence and attachments of March 15 and 18 from the plaintiff's counsel to the defendants' counsel was sufficient to satisfy the unequivocally clear and certain standard that the Fifth Circuit requires be met in evaluating the content of purported "other paper."[4]

The question before this Court on appeal is whether the decision of the magistrate judge was "clearly erroneous." In their Objections, the defendants continue to argue – as they did to the magistrate judge – that an email cannot constitute an "other paper" for purposes of 28 U.S.C. §1446(b)(3). Defendants simply have not supported this argument. The statute expressly does not exclude emails from the term "other paper," which has been held to require some sort of voluntary act by the plaintiff. The magistrate judge's conclusion that an email – sent by the plaintiff and attaching various documentation supporting the claim contained therein that the jurisdictional

---

[4]*See* Ruling on Motion, Doc. 32, at pp. 15-18.

9

amount for removal had been met – is reasonable and not contrary to law. The defendants have cited no persuasive authority that the foregoing conclusion is clearly erroneous given the facts and circumstances of this case. Of particular note to this Court is the fact that the information provided by the plaintiff on May 8, 2013 in response to the defendants' interrogatory was the same information provided to defendants in March 2013. Thus, the same information that was provided via email on March 15 and 18 – in the form of an express, definitive statement that the jurisdictional amount was satisfied, bolstered by medical documentation supporting said claim *with respect to the subject accident* – was again provided on May 8. While discovery might, perhaps, be the preferred method by which to communicate such information, it is not lost on this Court that the email communications between counsel were instigated by defense counsel, when defense counsel queried plaintiff's counsel by email on March 15, 2013 asking whether the jurisdictional threshold was satisfied. Under these circumstances, and considering that the information did not change in any way between the March 15 and 18, 2013 email communications and the formal discovery response propounded on May 8, 2013, this Court concludes the ruling of the magistrate judge was not clearly erroneous.

Therefore, after review of the record, the arguments of the parties, and the existing jurisprudence, this Court concludes the decision of the magistrate judge was not clearly erroneous, and the result and rationale of the magistrate judge in his Ruling on Motion [Doc. 32] is AFFIRMED. Thus, the defendants had thirty days from March 18, 2013 in which to remove the action to federal court. The defendants did not remove the action until June 5, 2013. This was more than thirty days after March 15 and more than thirty days after March 18. Therefore, the plaintiff's

Motion to Remand [Doc. 11] is GRANTED, and this action is REMANDED to the 15th Judicial

District Court for the Parish of Acadia, Louisiana.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____4_____ day of November, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE